## 9315

### STATE v. PEARSON.

#### (88 S. E. 255.)

1. CRIMINAL LAW—APPEAL—REVIEW—QUESTIONS OF FACT.—It is not the province of the Court, on appeal from a conviction of assault with intent to commit rape, to review issues of fact.

2. RAPE—ASSAULT WITH INTENT TO RAPE—EVIDENCE—QUESTION FOR JURY.—Evidence *held* to present a question for the jury whether the accused committed an assault with intent to commit rape.

3. RAPE—ASSAULT WITH INTENT TO RAPE—EVIDENCE—ADMISSIBILITY.— Where the accused in a prosecution for assault with intent to commit rape defended on the ground that he entered prosecutrix's room by collusion with the companion of prosecutrix who had agreed to have intercourse with him, but the evidence showed actual assault upon the prosecutrix, testimony as to such companion's lewdness was inadmissible, as irrelevant to the issue of assault.

Before BOWMAN, J., Marlboro, July, 1915.   Affirmed.

John Pearson was convicted of assault with intent to commit rape, and he appeals on the following exceptions:

1. Because the testimony in the case did not show directly, or by inference, the intent on the part of the defendant to commit a rape upon the prosecutrix. The undisputed evidence is that at the time of the alleged intent to commit a rape, there were two women in the room, and a bright lamp burning in the house, and it is unreasonable to suppose that an attempt to commit a rape would have been made under such circumstances.

2. Because the explanation of the defendant for his presence in the room with the two women was because he had made an arrangement with a visiting woman to meet her at this house and have carnal intercourse with her, and this is the only reasonable explanation of his presence in the house, under the circumstances.

3. Because the character of the visiting woman in the room was assailed for want of chastity, and although the testimony was conflicting, yet it was sufficient to show that she was the kind of character to inviegle the defendant into such a situation as he was found, and after discovery by the prosecutrix, to deny that the defendant came to the room to see her.

4. Because his Honor erred in refusing to grant a new trial upon the grounds that: 1st, there was not sufficient testimony to show that the intent of the defendant was to commit a rape; and, 2d, there was not sufficient evidence to justify the verdict of the jury.

5. Because the verdict is contrary to the evidence, and was the result of prejudice on the part of the jury, as the attempted offense had been committed only a few days before the trial, and the natural excitement arising from the public talk about it may have influenced somewhat the verdict in the case.

6. Because the Judge erred in excluding the testimony of Dr. W. J. Crosland as to the facts about her bad character for virtue, when it was shown that she was a servant in his family, and had been discharged by him by reason of the

facts known by him. While the rule is that a want of chastity can be shown only by proof of general reputation, yet where facts are known showing want of chastity this is stronger proof than the mere opinion of a witness and should be allowed to be proven in a case of life and death.

7. It is unreasonable to believe that the prosecutrix could detail a conversation which occurred when she was in a hysterical state, and she herself so testified.

8. Because the visiting woman does not corroborate the prosecutrix in the details of the alleged attempt to commit a rape. She does not prove that the accused put his hands upon the prosecutrix.

*Messrs. H. J. Riley* and *Townsend & Rogers,* for appellant, cite: *As to admissibility of Dr. Crosland's testimony:* 122 S. W. 555; 152 S. W. 990; Wigmore Ev., par. 200. *Insufficiency of evidence to support verdict:* 92 S. C. 427; 26 S. W. 626; 53 Ga. 50; 108 Ga. 477; 78 S. W. 514; 90 S. W. 178; 24 S. W. 907; 25 S. W. 287; 78 S. W. 229; 129 S. W. 1129; 110 S. W. 1072; 42 S. W. 826; 15 S. W. 137; 51 Pac. 818; 71 N. E. 443; 59 S. E. 1097; 6 Tex. 49; 86 N. C. 658; 41 Am. Rep. 478; 49 S. E. 336; 136 N. C. 684; 11 Ark. (6 Eng.) 389; 34 S. E. 135; 92 S. C. 427; 86 N. C. 658; 41 Am. Rep. 478; Roscoe Crim. Ev. 310; 78 S. W. 503; 117 N. C. 743; 23 S. E. 175; 49 S. E. 336.

*Messrs. Solicitor Spears* and *S. S. Tison,* for respondent.

March 7, 1916.

The opinion of the Court was delivered by Mr. Justice Gage.

Indictment, and conviction and judgment for the extreme penalty of the law, for an assault upon Maude Rowan with the intent to rape her. Appeal by the defendant.

There are eight exceptions, which need to be reported. The sixth exception alone makes an issue of law which we may consider; all the other seven exceptions make issues of fact, which are beyond our reach. But we shall make some discussion of the testimony, in deference to the earnest argument of the appellant's counsel. If there be any difficulty in the case, it is one outside the law and the testimony. All the parties to the transaction are negroes; the statute empowers the jury not only to find the guilt of the defendant, but in effect to fix the penalty; and the jury has found the defendant to be worthy of death. These are the embarrassing considerations, and counsel for appellant has dwelt upon them with power. But the consideration of them rests with another jurisdiction than this Court, and we think it is wisely so.

There was no issue of identity; the defendant was confessedly present at the time and place alleged. The time was past midnight. The place was the woman's bedroom, in her own house, in the town of Bennettsville. The two prime issues were: (1) Did the defendant assault the woman, and (2) did he have then the intent to rape her? There must, of course, have been submitted to the jury testimony tending to prove these issues; and there was such testimony. The house was that of a negro preacher. He was away from home on the night in question. The woman, Maude, is his wife, and she had for a companion and bedfellow on that night a woman named Meta McCoy. The testimony casts no shadow of suspicion upon the chastity or upon the veracity of the woman, Maude. By the defendant's own testimony he was in the very house he intended to enter, and his intent in entering was to have carnal knowledge of the woman, Meta, by her consent gained aforetime. The defendant, therefore, entered the house of another, without the consent of the owner, in the middle of the night, with a lustful mind. And by the defendant's testimony he had his pants off; he stumbled against a chair and awakened

Maude; she started to scream; he ran to the window, as did Maude, and both went out of it; but he swore it was not the garden window, it was the window on the porch.

The woman, Maude, corroborated the defendant's testimony in these last statements by him, except as to the window of exit; but she denied the alleged intercourse betwixt John and Meta. She testified, on cross-examination, that John laid hands on her twice, as she jumped out of bed and as she jumped out the window. She testified on direct examination that as she sprang out the window the defendant, John, grabbed her gown and tore the tail off it; that he followed her through the window into the garden, through the corn, and over the fence, when she escaped from him. The woman, Maude, also testified that while John was in the house, beside the bed in which she lay, he told her he wanted to satisfy his lust upon her and Meta, and that when she cried out he threatened with oaths to kill her if she did not be still.

The woman, Meta, testified to the defendant's oaths and threats, to the absence of his outer garments, to the expression by the defendant of his intent for carnal intercourse, to his flight out of the window into the garden after Maude; and she denied having had carnal intercourse with the defendant.

The defendant denied the threats; he denied the laying on of hands; he denied having any intent to have carnal knowledge of Maude, and any intent to have carnal knowledge of Meta against her will.

This testimony made the bare issue of who swore the truth, and that was surely for a jury of the vicinage. If the State's witnesses are to be believed, the transaction was a shocking case of assault with intent to ravish; and the full force of its realization is only arrested because of the social status of the parties to it, the supposed moral inferiority of their race, and the terrible penalty the jury has put upon the offender.

The sixth exception makes an issue of law, and it relates to the alleged wrongful exclusion of testimony offered by the defendant. Dr. Crossland was the witness. He testified that Meta had been in his service. He was then asked, "Why did you get rid of her?" The Court thought the inquiry was irrelevant. We concur in that opinion. The admitted purport of the testimony was to show that Meta was lewd. The argument is that, when a woman swears to an assault with intent to ravish upon her, it is relevant and competent to inquire about the woman's character for chastity; not to prove that such a one is not a subject of rape, for she is; but to prove that she probably consented to the act of intercourse. But in the instant case the prosecutrix is not Meta, but Maude, and her character for chastity was never questioned. It may be that under the testimony the defendant might have been charged with an assault upon Meta, as well as upon Maude; but he was not so charged. The only connection between the women is they occupied the same bed. If John assaulted Maude, and had the intent to rape her, then it is irrelevant to inquire into the character for chastity of Meta. The argument further is that John's only defense was that he was in the house by collusion with Meta, to have intercourse with her, and not to assault Maude. And to prove that he tendered Dr. Crossland to former acts of adultery by Meta. The issue of Meta's acts at another time was collateral to the main issue, which was: Did John assault Maude with the intent to rape her? The Court exercised a wise discretion not to enter upon its inquiry. And furthermore, if the jury believed the testimony of Maude, and it must, the character of Meta for chastity was of small import.

The judgment of the Circuit Court is affirmed. It is so ordered. Let the cause be remanded, so that the Court may fix another day for the execution of the judgment.